IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSE, KNOXVILLE DIVISION

CASE NO: 3:17-cv 00372-TAV-HBG

YACHTBRASIL MOTOR BOATS &
CHARTERS, LLC, a Florida
limited liability company,

      Plaintiff,

vs.

FORWARD VENTURES GROUP
PARTNERS, LLC a/k/a Absolute
North America, a Tennessee limited
liability company,

      Defendant.

_____/

## AMENDED COMPLAINT

COMES NOW the Plaintiff, YACHTBRASIL MOTOR BOATS
&CHARTERS, LLC, a Florida limited liability company (hereinafter "Plaintiff"
or "YachtBrasil"), by and through their undersigned counsel, and hereby files its
Amended Complaint against Defendant, FORWARD VENTURES GROUP
PARTNERS, LLC a/k/a Absolute North America, a Tennessee limited liability
company (hereinafter "Defendant", "Forward Ventures", or "ABNA"). In
support thereof, the Plaintiff states the following:

## THE PARTIES, JURISDICTION & VENUE

1.    This is an action for damages exceeding $75,000.00, exclusive of
interest, costs, and attorney's fees within the jurisdictional limits of this

Court. Plaintiff is a resident of the State of Florida, and Defendant is the resident of the State of Tennessee. Therefore, diversity jurisdiction of this Court is proper. 28 U.S.C. § 1332.

2.     Further, this Court has jurisdiction pursuant to the Magnuson-Moss Warranty Act 15 U.S.C. § 2310(d)(1) which provides that "a consumer who is damaged by a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract , may bring suit for damages and other legal and equitable relief."

3.     Plaintiff, YachtBrasil is a limited liability company organized and existing under the laws of the State of Florida and authorized to conduct business with its principal place of business in Miami-Dade County, Florida.

4.     Defendant, Forward Ventures, is a limited liability company organized and existing under the laws of the State of Tennessee and which transacts business in Florida, Tennessee, and numerous other States and Countries.

5.     Venue is proper in this Court Pursuant Paragraph 13.4 of the Parties' Dealer Sales and Service Agreement (See Exhibit "A") which states in pertinent part: "*Governing Law.* The interpretation, validity and performance of this Agreement shall be governed by the laws of the State of Tennessee. Representative agrees that any action or proceeding arising

hereunder shall be commenced exclusively in state or federal courts located in Knox County, Knoxville and consents to the jurisdiction In Tennessee."

6.    All conditions precedents to the bringing of this action have occurred have been waived or have otherwise been satisfied.

## **GENERAL ALLEGATIONS**

### ***The Parties***

7.    Plaintiff, YachtBrasil, is a full-service yacht dealership and brokerage company engaged in the business of marketing, purchasing and selling luxury yachts and other recreational watercraft within the State of Florida and elsewhere (the "Business"). In connection with its Business, YachtBrasil has been an authorized dealer of various pleasure yacht manufacturers including, at one time, for the Absolute brand/line of motor yachts in the U.S. market.

8.    Defendant, Forward Ventures, was the exclusive distributor of motor vessels (yachts) and other marine products manufactured in Italy by Absolute S.P.A. ("Absolute") for distribution and sale in North America and elsewhere, including the State of Florida, as more particularly described below.

9.    In fact, Defendant utilizes the trade name "Absolute Yachts North

America," "Absolute North America" or "ABNA" in its business dealings and coordinates Absolute's dealer network in the United States and Mexico. Currently, Defendant's website reflects that its yachts "are available through any of our dealers in New York, Florida, California, and Mexico."

10.     Accordingly, based upon the parties' prior course of dealings as described below, Defendant knew that YachtBrasil was purchasing vessels to be resold to its customers/clients for use as pleasure yachts within the United States. Defendant also knew, or should have known, that YachtBrasil intended to market and sell motor yachts for the particular purpose of navigation at Sea consistent with Defendant's representations that its distributorship was geared towards the importation of vessels constructed and built to operate for long distance travel and luxury as a private pleasure yacht.

### ***The Dealer Sales and Service Agreement***

11.     On October 25, 2013, YachtBrasil and Defendant entered into a Dealer Sales and Service Agreement (the "Dealer Agreement"), pursuant to which Defendant appointed YachtBrasil as the exclusive dealer of Absolute yachts within a specified territory including the State of Florida. (See Exhibit "A").

12.     Further, the Dealer Agreement set forth procedures for the placement of purchase orders of Absolute vessels by YachtBrasil directly from Defendant, whereby YachtBrasil would send Defendant a completed "Order Form" specifying the particular terms for each order.

13.     The Dealer Agreement included a warranty provision applicable to sales by YachtBrasil to its customers/clients considered "end users" of the Absolute brand of vessels. Notably, the warranty coverage was "for a term of two (2) years from the date of delivery to the end user..." That is, the warranty was to be passed onto the actual purchaser of an Absolute brand vessel from the dealer, namely, YachtBrasil.

14.     Further, YachtBrasil was obligated by the terms of the Dealer Agreement to expend significant funds for the advertising of the Absolute products and for the benefit of Defendant specifically:

*3.2 Sale, Service and Promotion of Products.* It is the obligation of Dealer to promote and sell at retail the Products, and to promote and render customer support and service, whether or not under warranty, for the Products, regardless of the physical location of such Products after the time of delivery. The Dealer shall during the continuance of this Agreement diligently and faithfully serve ABNA as a Dealer in the Territory and shall use its best commercially reasonable endeavors to improve the Goodwill of Dealer and ABNA in the Territory and to further and increase the sale of the Products in the Territory. Dealer agrees to maintain purchase performance satisfactory to ABNA and recognizes that its agreement to maintain purchase performance satisfactory to ABNA is both a condition precedent and a condition

subsequent to ABNA entering into the Agreement Dealer agrees to meet such minimum purchase requirements and sales targets as stipulated in Schedule 3."

*6.2 Cost of Marketing.* The cost of all the advertising and sales promotion activities within the Territory shall be paid by Dealer. ABNA will pass onto Dealer all sales leads for prospective customers in the Territory. Additionally, and until such time that another dealer is appointed in such territories, ABNA will pass onto Dealer all sales leads for prospective customers originating from neighboring States to Dealer's Territory. Dealer is required to maintain proper and accurate lead management records with respect to Products, which will be available to ABNA at any time upon request."

15.  YachtBrasil complied with the terms and requirements of the Parties' Dealer

Agreement through the time of its termination by Defendant.

### *YachtBrasil Purchase of 2014 Absolute 56 STY from Defendant*

16.  On or about December 7, 2013, YachtBrasil as a buyer ordered an Absolute

Vessel, Volvo Penta engines 2xDI1-IPS800, Hull Identification No.  IT-

ABSAV423L314/US-ABNAV423L314 (the "Absolute 56 STY") from

Defendant as the seller for a net purchase price of $1,228,000.00 (the

"Purchase Price"), which transaction was memorialized via Invoice No.

142-2013 (the "Invoice" See Exhibit "B").

17.  Significantly, the Invoice was acknowledged and signed by both

YachtBrasil and Defendant, and incorporated certain terms and

conditions that included, among other things, the equipment options,

payment schedule and other details with respect to the purchase and sale of the Vessel as set forth in the General Conditions of Supply thereto.

18.    At the time YachtBrasil purchased the Vessel, Defendant knew or should have known that YachtBrasil was relying upon its skill, representations and judgment to select, furnish, and provide a vessel that was fit to be used for a particular purpose in the United States and elsewhere.

19.    Consistent with the terms of the Invoice, YachtBrasil paid the Purchase Price prior to the Defendant's delivery of the Vessel in or around January 2014.

*Mechanical Problems and Non -Compliance of the 2014 Absolute 56 STY*

20.    Unfortunately, upon Defendant's delivery of the Vessel into the United States (See Exhibit "C" Builder's Certification and First Transfer of Title), the Vessel never operated properly and was a non-conforming good under the Invoice, which was unknown to YachtBrasil at the time. ABNA and/or its principal Mr. Constantinos Constantinou was the Seller of the Vessel at the time its ownership was transferred to YachtBrasil on or about February 5, 2014.

21.    By way of example, but not limitation, the Vessel's shore power was configured for European specifications and therefore was unsuitable for use by YachtBrasil and its customers in the United States.  Immediately

upon discovering these defects and on numerous occasions thereafter, YachtBrasil notified Defendant concerning the shore power cabling problems associated with the Vessel.

22. Accordingly, at all times material, Defendant was aware that the Vessel Specifications did not meet American standards, despite the fact that the Invoice provided that the electrical systems (110 V/60hz) for the Vessel were to be designed for use in the United States. In fact, YachtBrasil had paid a substantial surcharge for this "Americanized" electrical system feature to be installed on the Vessel.

23. Further, the Vessel suffered significant additional electrical problems that caused the Vessel's circuit breakers to "blow" when the air conditioning system experienced heavy use. For example, the shore power breakers were incorrectly sized, and the requisite cabling was too small and inappropriate for the specified amperage.

24. These additional engineering and mechanical issues were only discovered by YachtBrasil in or around March 2014 after YachtBrasil began allowing interested parties to take the Vessel on sea trials in anticipation of potentially purchasing the Vessel. However, every time a prospective buyer tested the Vessel the electrical system would fail. Consequently, YachtBrasil was unable to consummate a sale of the Vessel despite good

faith efforts to do so; in fact, even when the Vessel was docked, the A/C breakers would trip on a regular basis.

25.     On August 12, 2014, after several months of attempting to resolve the situation with Defendant, YachtBrasil obtained a marine survey identifying and providing specific recommendations for remedying the defects with the Vessel.  Notwithstanding, Defendant continued to ignore the recommendations contained in the survey and failed to address the demands made by YachtBrasil related to the electrical system for the Vessel.

26.     Only when it became clear that YachtBrasil needed to display and market the Vessel for sale at the upcoming Fort Lauderdale International Boat Show and the Miami International Boat Show (the "Boat Shows") did Defendant decide, with the assistance of engineers sent by Absolute, to board and attempt to remedy the ongoing defects attendant with the Vessel.

27.     As it initially appeared that the work performed by Defendant and/or Absolute had resolved some of the mechanical deficiencies evident with the Vessel, YachtBrasil continued its efforts to market and sell the Vessel during the Boat Shows.  However, the Vessel again experienced problems with its electrical system that prevented YachtBrasil from successfully

selling the Vessel.

28.     Accordingly, YachtBrasil again notified Defendant regarding the recurring

electrical system problems related to the Vessel. Upon information and

belief, Defendant retained its own marine surveyor to conduct an inspection

and analysis of the Vessel. Yet, following the completion of the survey the

Defendant refused to share the results with YachtBrasil.

29.     To date, Defendant has refused to share with YachtBrasil its survey and

the findings concerning the electrical and other design, manufacturing,

and construction problems that have continued to plague the Vessel,

despite YachtBrasil's repeated demands that Defendant remedy the

outstanding defects.

30.     As a result on October 15, 2015, YachtBrasil sent a demand letter to

Defendant care of its manager and principal member, Constantinos K.

Constantinou ("Constantinou") wherein YachtBrasil sought, among other

alternatives, revocation of acceptance of the Vessel in exchange for

reimbursement of the Purchase Price. In response Defendant denied any

liability for the above-described design manufacturing and construction

defects, refused to retake possession/accept delivery of the Vessel

from YachtBrasil and refused to refund the Purchase Price to Plaintiff.

31.     Meanwhile, YachtBrasil has undertaken efforts at its own expense to

continue marketing the Vessel for sale to mitigate its damages. Still, because of the adverse conditions that exist with the seaworthiness and corresponding diminution in value of the Vessel, YachtBrasil has and continues to suffer damages.

### *Termination of the Dealer Agreement*

32.  On or about April 22, 2015, Defendant sought to terminate the Parties' Dealer Agreement (See Exbibit "A") by way of a correspondence directed to Plaintiff (See Exhibit "D").

33.  The termination of the Parties Dealer Agreement would become effective one hundred and twenty (120) days after ABNA's service upon YachtBrasil of the required "termination notice" (See Exhibit "E").

34.  In blatant contradiction with the Dealer Agreement ABNA immediately, on or about April 27, 2015, caused YachtBrasil to be removed from Absolute's online list of Authorized Dealers (See Exhibit "F").

35.  ABNA in contravention of the Dealer Agreement (See Exhibit "A") along with other person(s) known or unknown facilitated the sale of multiple Absolute Yachts, namely:

   a)  Absolute 60Fly/2015 (hereinafter "Absolute 60Fly") sold to Euro Yachts;

   b)  Absolute 55Fly/2013 Blue hull (hereinafter "Absolute 55Fly")

          sold by Strong Marine; and

    c)  Absolute 64/2015 Hull IT-ABSBA228G415 / US-

        ABNBA228G415 (hereinafter "Absolute 64").

within the Defendant's sales territory as defined in Paragraph 1.2 of the Dealer Agreement (See Exhibit "A") prior to the effective date of YachtBrasil's termination under the terms of the Dealer Agreement, and Defendant's Notice of Termination dated April 22, 2015 (See Exhibit "D").

36.    Further, ABNA caused a customer of YachtBrasil, Mr. Carlos Klawitter and his Corporation Hairpin Investments Ltd (hereinafter "Klawitter"), to denunciate/cancel their contract for the purchase of Absolute 72/2016 named Galileu, Hull IT-ABSAY530H516 / US-ABNAY530H516 (hereinafter "Absolute 72") from YachtBrasil (See Exhibit "F").

37.    Upon information and belief such Vessel was thereafter sold to Klawitter by Defendant, and without the participation of YachtBrasil.

## COUNT I

### (BREACH OF CONTRACT ABSOLUTE 56STY)

38.    Plaintiff, YachtBrasil, re-alleges and incorporates the allegations set forth in paragraphs 1through through 31 above, as if fully set forth herein.

39.    YachtBrasil and Defendant were, at all times material hereto, in agreement with and understood the essential and material terms of their

business relationship as reflected in the Invoice.

40.     Accordingly, a valid written contract existed between YachtBrasil and Defendant, whereby YachtBrasil as buyer was to pay the Purchase Price in exchange for the Abolute 56STY (See Exhibit "B") to Forward Ventures as the seller.

41.     YachtBrasil performed all obligations consistent with the terms of the Invoice.

42.     Defendant breached the contract with YachtBrasil by failing to deliver the Absolute 56STY in conformance with the Invoice, which included a fully functioning and operational electrical system for use within the Business.

43.     Additionally, Defendant breached the contract with YachtBrasil by failing to properly remedy the material defects related to the Absolute 56STY in a timely manner to permit YachtBrasil to market and sell the Vessel.

44.     Upon information and belief Defendant ordered the Absolute 56STY from Absolute Spa. prior to Plaintiff's purchase from Defendant, and that the Absolute 56STY did not have the Vessel Specifications to meet American standards, despite the fact that the Invoice provided that the electrical systems (110 V/60hz) for the Vessel were to be designed for use in the United States.  In fact, YachtBrasil had paid a substantial surcharge for

this "Americanized" electrical system feature to be installed on the Absolute 56STY.

45.     As a direct and proximate result of Defendant's breaches of the contract, YachtBrasil has suffered damages.

**WHEREFORE,** Plaintiff YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, compensatory and special damages for lost profits, income, revenues and business opportunities, together with prejudgment interest and costs, and such further relief as this Court deems just and proper.

<u>**COUNT II**</u>

(UNJUST ENRICHMENT ABSOLUTE 56STY)

46.     Plaintiff, YachtBrasil, re-alleges and incorporates the allegations set forth in paragraphs 1 through through 31 above, as if fully set forth herein.

47.     YachtBrasil conferred benefits upon Defendant by providing the Purchase Price, in exchange for which YachtBrasil was to receive the Absolute 56STY in conformance with the Invoice and in good working order for the Business.

48.     Defendant, at all times material hereto, was aware of, and knowingly accepted and retained the benefits of the Purchase Price paid by

YachtBrasil under the express agreement and understanding that YachtBrasil would receive the Absolute 56STY in satisfactory condition.

49. Upon information and belief Defendant ordered the Absolute 56STY from Absolute Spa. prior to Plaintiff's purchase from Defendant, and that the Absolute 56STY did not have the Vessel Specifications to meet American standards, despite the fact that the Invoice provided that the electrical systems (110 V/60hz) for the Vessel were to be designed for use in the United States. In fact, YachtBrasil had paid a substantial surcharge for this "Americanized" electrical system feature to be installed on the Vessel.

50. The circumstances under which Defendant obtained the Purchase Price make it inequitable for Defendant to retain these benefits.

51. Consequently, as a direct and proximate result of the improper and wrongful acts of Defendant as described herein, YachtBrasil has and continues to suffer damages, including lost profits and income.

WHEREFORE, Plaintiff, YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, compensatory and special damages for lost profits, income, revenues and business opportunities, together with prejudgment interest and costs, and such further relief as this Court deems just

and proper.

## COUNT III

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ABSOLUTE 56STY)

52.    Plaintiff, YachtBrasil, re-alleges and incorporates the allegations set forth in paragraphs 1 through 31 above, as if fully set forth herein.

53.    The Invoice contained an implied covenant of good faith and fair dealing that prohibited Defendant from engaging in activities and/or conduct that would prevent YachtBrasil from receiving the benefits of its purchase of the Absolute 56STY.

54.    Upon information and belief Defendant ordered the Absolute 56STY from Absolute Spa. prior to Plaintiff's purchase from Defendant, and that the Absolute 56STY did not have the Vessel Specifications to meet American standards, despite the fact that the Invoice provided that the electrical systems (110 V/60hz) for the Vessel were to be designed for use in the United States. In fact, YachtBrasil had paid a substantial surcharge for this "Americanized" electrical system feature to be installed on the Vessel.

55.    YachtBrasil fully performed all covenants, conditions and obligations under the Invoice through its payment of the Purchase Price.

56. Defendant breached the implied covenant of good faith and fair dealing contained in the invoice.

57. As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing YachtBrasil has and continues to suffer damages.

WHEREFORE, Plaintiff, YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, compensatory and special damages for lost profits, income, revenues and business opportunities, together with prejudgment interest and costs, and such further relief as this Court deems just and proper.

## COUNT IV

### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND REVOCATION OF ACCEPTANCE ABSOLUTE 56STY)

58. Plaintiff, YachtBrasil, re-alleges and incorporates the allegations set forth in paragraphs 1 through 31 above, as if fully set forth herein.

59. At all times material, the Vessel was a "good" within the contemplation of the Tennessee's Uniform Commercial Code.

60. Further, at all times material, YachtBrasil was a "buyer" within the meaning of and as contemplated by Tenn. Code § 47-2-608, while

Defendant was a "Seller" within the meaning of and as contemplation by Tenn. Code § 47-2-608.

61.   Upon information and belief Defendant ordered the Absolute 56STY from Absolute Spa. prior to Plaintiff's purchase from Defendant, and that the Absolute 56STY did not have the Vessel Specifications to meet American standards, despite the fact that the Invoice provided that the electrical systems (110 V/60hz) for the Vessel were to be designed for use in the United States. In fact, YachtBrasil had paid a substantial surcharge for this "Americanized" electrical system feature to be installed on the Vessel.

62.   This situation modifies the application of the warranty included in the Dealer Agreement (See Exhibit "A") as a result of the fact Defendant sold the Absolute 56STY to Plaintiff after its purchase from Absolute Spa.

63.   During the course of the transactions described herein, Defendant was an exclusive distributor for Absolute and possessed special skills and judgment upon which YachtBrasil relied upon in purchasing the Vessel.

64.   On or about December 7, 2013, YachtBrasil entered into an agreement with Defendant to purchase the Vessel in exchange for the Purchase Price of $1,228,000.00, as evidenced by the Invoice (See Exhibit "B").

65.   Defendant impliedly warranted to YachtBrasil that the Vessel was of

merchantable quality, fit, safe and in proper condition to be used with reasonable safety, efficiency and comfort. More specifically, Defendant impliedly warranted that the Vessel (i) would pass without objection in the trade under the description set forth under the Invoice; (ii) was of fair average quality within the Invoice description; (iii) was fit for the ordinary purposes for which it is used; (iv) would operate as vessels of similar kind and quality; and (v) would otherwise conform to the promises and/or affirmations of fact concerning the marketability, quality and standards of the Vessel made by Defendant.

66. In purchasing the Vessel, YachtBrasil relied on Defendant's implied warranty of merchantability and affirmation that the Vessel would be a conforming good. However, since delivery of the Vessel to YachtBrasil, in or around January 2014, YachtBrasil has been unable to market and sell the Vessel due to safety concerns arising from unsuitable shore power configuration issues with the air conditioning system, and other significant design manufacturing and construction issues related to the Vessel.

67. Currently, and at all times material hereto, the Vessel was not of merchantable quality and was unfit, unsafe, and unusable for the ordinary purpose for which it was intended, remains unusable as a private pleasure

yacht and is incapable of safe navigation.

68.    The Vessel was/is not merchantable and fails to perform or operate in the manner for which it was designed or intended.  To date, the Vessel has been out of service in excess of two (2) years and remains out of service and in need of repairs due to non-conformities and defects, for which Defendant has refused, been unable, or unwilling to repair such defects existing in the Vessel.

69.    As a result, on October 15, 2015, YachtBrasil sent a demand letter to Defendant care of its manager and principal member, Constantinos K. Constantinou ("Constantinou") wherein YachtBrasil sought, among other alternatives, revocation of acceptance of the Vessel in exchange for reimbursement of the Purchase Price.  In response Defendant has denied any liability for the above-described design manufacturing and construction defects,  refused  to retake possession/accept delivery of the Vessel YachtBrasil, and refused to refund the Purchase Price to Plaintiff.

70.    Plaintiff's revocation of acceptance occurred within a reasonable time after discovering the grounds for such.

71.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, YachtBrasil has suffered damages to the full

Case 3:17-cv-00372-TRM-HBG    Document 67    Filed 01/22/18    Page 20 of 30
PageID #: 360

extent of the Purchase Price of the Vessel in addition to consequential, indirect, and incidental expenses.

72.   Defendant's breach of implied warranty of merchantability has also deprived YachtBrasil the benefit it bargained for when purchasing the Vessel.

73.   YachtBrasil did not receive from Defendant the Vessel it bargained for and has therefore been damaged to the full extent of the Vessel's purchase price, consequential, and incidental costs, as well as attorneys' fees.

   **WHEREFORE,** Plaintiff YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, electing to revoke its acceptance of the non-conforming Vessel and seeking return of the Purchase Price, recovering incidental and consequential damages arising from the sale of a non-conforming good by Defendant, lost profits, together with costs as well as attorneys' fees  pursuant  to *Tenn. Code Ann.* § 47-2-711 & 47-2-714, and such other relief as the Court deems just and proper.

# COUNT V

## (BREACH OF IMPLIED \WARRANTY FITNESS FOR A PARTICULAR PURPOSE 56STY)

74.   Plaintiff, YachtBrasil, re-alleges and incorporates the allegations set forth in paragraphs 1 through 31 above, as if fully set forth herein.

75.   At all times material, the Vessel was a "good" within the contemplation of Tennessee's Uniform Commercial Code.

76.   Further, at all times material, YachtBrasil was a "buyer" and/or "consumer" within the contemplation of Tennessee's Uniform Commercial Code, while Defendant was the commercial manufacturer, supplier, merchant, warrantor and/or seller of the Vessel and was the commercial manufacturer, supplier, merchant and/or seller of similar vessels and other motor vessels to the public, including YachtBrasil, within the compilation of Tennessee's Uniform Commercial Code.

77.   During the transactions described herein, Defendant was an exclusive distributor for Absolute and possessed special skills and judgment upon which YachtBrasil relied in purchasing the Vessel.

78.   Prior to entering into the Agreement to purchase the Vessel, YachtBrasil advised Defendant it was purchasing the Vessel to be resold to

YachtBrasil's customers/clients for use as a pleasure yacht within the United States.

79. Defendant knew, or should have known, that YachtBrasil intended to resell the Vessel to YachtBrasil's customers/clients for the particular purpose of navigation at sea consistent with Defendant's representations that the Vessel was constructed and built to operate for long distance travel and provide comfort and luxury as a private pleasure yacht.

80. At the time YachtBrasil purchased the Vessel, Defendant knew or should have known that YachtBrasil was relying upon its skill, representations and judgment to select, furnish and provide a vessel which was fit to be used for a particular purpose, including use as a long-distance traveling pleasure yacht as represented to YachtBrasil by Defendant for use in the Plaintiff exclusive territory namely Florida and Puerto Rico.

81. Defendant warranted that the Vessel was reasonably fit for the intended use of YachtBrasil and its end customers/clients. As such, YachtBrasil was a foreseeable purchaser and a foreseeable user who used the Vessel for the purpose for which it was intended in the Business.

82. The Vessel in its current state is unusable as a private pleasure yacht and incapable of safe navigation and, consequently, YachtBrasil is unable to resell the Vessel.

83. Defendant breached the implied warranty of fitness for a particular purpose by failing to properly design, inspect, test, construct, manufacture and outfit the Vessel and by delivering a Vessel that was unfit for Plaintiff's intended use as outlined above, which is hereby incorporated as though set forth herein in full.

84. Plaintiff timely notified Defendant of the deficiencies of the Vessel and that it was unfit for Plaintiff's particular purposes. The Vessel has not been in service due to numerous defects and is unseaworthy in its current state.

85. The breaches of warranty by Defendant has deprived YachtBrasil of the benefit bargained for when purchasing the Vessel and for which Plaintiff did not receive the Vessel for which it bargained.

86. As a direct and proximate result of Defendant's breach of warranty, YachtBrasil has suffered damages including the Purchase Price of the Vessel and consequential and incidental losses.

**WHEREFORE,** Plaintiff, YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, electing to revoke its acceptance of the non-conforming Vessel and seeking return of the Purchase Price, recovering incidental and consequential damages arising from the sale of a non-

conforming good by Defendant, together with costs as well as attorneys' fees

pursuant to *Tenn. Code Ann.* § 47-2-711 & 47-2-714, and such other relief as

the Court deems just and proper.

## COUNT VI

### (BREACH OF CONTRACT ABSOLUTE 60FLY, ABSOLUTE 55FLY, ABSOLUTE 64, and ABSOLUTE 72)

87.　The Plaintiff reiterates, incorporates and adopts by reference all of the

allegations contained in paragraphs 1-15 & 32-37 of the complaint.

88.　That Defendant entered into a contract with Plaintiff (See Exhibit "A")

whereby the Plaintiff was the exclusive Dealer for Absolute Yachts

within its territory, namely Florida and Puerto Rico (See Section 1.2 of

the Dealer Agreement). That said contract was entered into under the

laws of the State of Tennessee (See Section 13.4 of the Dealer

Agreement).

89.　That during this contract period Defendant participated in sales of

Absolute Yacht within Plaintiff's territory, and Plaintiff was excluded

from such sales, and received no compensation for such sales.

90.　ABNA in contravention of the Dealer Agreement (See Exhibit "A") along

with other person(s) known or unknown facilitated the sale of multiple

Absolute Yachts, namely:

a) Absolute 60Fly/2015 (hereinafter "Absolute 60Fly") sold to Euro Yachts;

b) Absolute 55Fly/2013 Blue hull (hereinafter "Absolute 55Fly") sold by Strong Marine; and

c) Absolute 64/2015 Hull IT-ABSBA228G415 / US-ABNBA228G415 (hereinafter "Absolute 64");

d) ABNA caused a customer of YachtBrasil, Mr. Carlos Klawitter and his Corporation Hairpin Investments Ltd (hereinafter "Klawitter"), to denunciate/cancel their contract for the purchase of Absolute 72/2016 named Galileu, Hull IT-ABSAY530H516 / US-ABNAY530H516 (hereinafter "Absolute 72") from YachtBrasil (See Exhibit "F").

within the Plaintiff's exclusive sales territory as defined in Paragraph 1.2 of the Dealer Agreement (See Exhibit "A") prior to the effective date of YachtBrasil's termination under the terms of the Dealer Agreement, and Defendant's Notice of Termination dated April 22, 2015 (See Exhibit "D").

91.  That Defendant received compensation for the sale of the Absolute Yachts that was received outside of the terms of Dealer Agreement with Plaintiff, YachtBrasil.

92.  That in consideration for the Dealer Agreement that Plaintiff spent over five hundred thousand ($500,000.00) Dollars in advertising, establishing facilities and promoting of Defendant ABNA and Absolute Yachts.

93.    That the contract between the Plaintiff and Defendant legally bound the Plaintiff to incur these expenditures on behalf of Defendant ABNA and Absolute Yachts (See Exhibit "A" Paragraphs 3 & 6).

94.    Further, Defendant has caused Plaintiff additional significant damages due to its action(s) in removing Plaintiff from being a listed "Dealer" of Absolute Yachts as early as April 27, 2015 (See Exhibit "E").

95.    Defendant's Notice of Termination of Dealer Agreement dated April 22, 2015 (See Exhibit "D") provided for Plaintiff's termination one hundred and twenty (120) days after said Notice. Therefore, Plaintiff was entitled to act as Dealer until August 23, 2015.

96.    Defendant's action(s) in removing Plaintiff from being a listed "Dealer" caused Plaintiff significant damages and lost business opportunities due to clients and prospective clients contesting Plaintiff's status as a "Dealer" of Absolute Yachts under the Dealer Agreement (See Exhibit "A").

97.    That as a result of Defendant's breach of contract the Plaintiff has suffered damages in an amount to proven at a hearing on this cause.

    **WHEREFORE,** Plaintiff YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, compensatory and special damages

for lost profits, income, revenues, and business opportunities, together with prejudgment interest and costs, and such further relief as this Court deems just and proper.

## COUNT VII

### (TORTIOUS IN ERFERENCE WITH CONTRACT ABSOLUTE 72)

1.    The Plaintiff reiterates, incorporates, and adopts by reference all of the allegations contained in paragraphs 1-15 & 32-37 of the Amended Complaint.

2.    That Defendant did intentionally set out to induce Klawitter to breach Contract between Plaintiff and Klawitter (See Exhibit "F"). That said inducement to breach contract occurred in the State of Florida or the State of Tennessee.

3.    That said inducement came in the form inducements to reduce price(s), promises to provide additional upgrades to the Absolute 72, or other inducements including the re-purchase of another vessel on favorable terms.

4.    That at all times during this inducement Defendant acted with dishonorable, unethical, and unprofessional conduct in violation of Tenn. Code Sec. 68-115-207.

5.    Further, Defendant is in violation of Tenn. Code Sec. 47-50-109 for the

procurement of a breach of contract. As such, said defendants shall be liable to the Plaintiff in treble the amount of damages resulting from or incident to the breach of the contract.

6.    Due to the Defendant's inducement to breach contract the Plaintiff has suffered and will continue to suffer damages in an amount to be proven at a hearing on this cause.

**WHEREFORE,** Plaintiff YachtBrasil Motor Boats & Charters, LLC, demands judgment against Defendant, Forward Ventures Group Partners, LLC, for damages including, but not limited to, treble damages pursuant to Tenn. Code Sec. 47-50-109 for the procurement of a breach of contract, compensatory and special damages for lost profits, income, revenues and business opportunities, together with prejudgment interest and costs, and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

7.    Plaintiff demands a trial by jury as to all claims and issues so triable as a matter of right.

Dated: January 22, 2018

/s/ Martin G. McCarthy
Martin G. McCarthy, Esq. (FBN 0149896)
McCarthy@Miami-Law.com
Eyersel@Miami-Law.com
Gendler, McCarthy, & Yersel
2151 S. Lejeune Road, Ste. 306
Coral Gables, FL 33134
Telephone (305) 444-1533
Facsimile (305) 444-1075
Attorney for Plaintiff, YachtBrasil

## CERTIFICATE OF SERVICE

       I hereby certify that on January 12, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the forgoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                /s/ Martin G. McCarthy
                                Martin G. McCarthy, Esq.

## SERVICE LIST

Via transmission of Notices of Electronic Filing and email service to:

Thomas M. Hale, BPR No. 007049
George R. Arrants, BPR No. 012555
Kramer Rayson LLP
P.O. Box 629
Knoxville, TN 37901-0629
tomhale@kramer-rayson.com
garrants@kramer-rayson.com
Counsel for Defendant,
Forward Ventures Group Partners, LLC